Filed 3/24/23  P. v. Cedillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049841 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS981662B) |
| v. | |
| DANIEL ADRIAN CEDILLO, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

In 1999, a jury convicted defendant Daniel Adrian Cedillo of second degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (b)).[1]  The jury found true the following enhancement allegations:  that defendant committed the crime for the benefit of, at the direction of, or in association with, a criminal street gang (§ 186.22, subd. (b)(1)); that defendant was a principal in the above offense and that in the commission of the offense, at least one principal intentionally and personally discharged and personally used a firearm, proximately causing great bodily injury (§ 12022.53, subd. (d)); and that a principal was armed with a firearm (§ 12022, subd. (a)(1)).  The trial court sentenced defendant to prison for 40 years to life, but that sentence was later reduced to 16 years to life as the result of two enhancements being struck.

---

[1] All further statutory references are to the Penal Code.

Defendant challenges the trial court's denial of his two former section 1170.95 (now § 1172.6) petitions to have his murder conviction vacated and to be resentenced. The trial court denied defendant's petitions. In response to defendant's first petition, the trial court found that defendant failed to make a prima facie showing of entitlement to relief. In denying defendant's second petition, the trial court simply referred to the court's denial of defendant's first petition. The denial of defendant's second petition was issued by a different judge than the judge who denied defendant's first petition. Defendant contends that he made a prima facie showing because under recent changes to the law, aiders and abettors can no longer be convicted of second degree murder based on implied malice. For reasons that we will explain, we reverse the trial court's denial of defendant's second petition and direct the trial court to consider whether defendant's most recent petition under section 1172.6 establishes a prima facie case for relief.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Background*[2]

Defendant and other men had a history of causing trouble at a bar in Chualar.  On March 23, 1998, Ignacio Valencia, who co-owned the bar with his wife, went out to investigate a situation in the bar's parking lot.  Valencia found defendant sitting in a car with the door open, with two other men nearby.  Valencia asked defendant what he was doing in the car, and defendant responded by calling Valencia names.  They began to argue, and Valencia approached defendant in a threatening manner.  Valencia's wife told

---

[2] This factual background is a summary of the facts stated in this court's opinion in defendant's direct appeal, case No. H020064.  The initial portion of the procedural background section is also taken from that opinion.  A Court of Appeal opinion, whether or not published, is part of the record of conviction and is properly considered in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1172.6.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, overruled in part on another ground by *People v. Lewis* (2021) 11 Cal.5th 952, 961 (*Lewis*).)  On December 8, 2022, this court granted the Attorney General's request to take judicial notice of our prior opinion.

defendant and the other men to leave, but they did not. Valencia then drew a gun and fired into the air, causing the three men to scatter. As the men left, Valencia's wife heard one of the men, Michael Palacio, say in Spanish that Valencia had "bought his death."

Valencia then drove to his nearby home, where four of his wife's children were present. A few minutes later, one of the children heard gunshots, with one of the shots entering the house. When the child looked out the window, she saw Valencia lying on the ground. One of the children then called law enforcement. Sheriff's deputies who responded heard shots from what sounded like a .22-caliber automatic weapon, then a couple of shots from a larger caliber firearm, and then more .22-caliber shots. The deputies arrived on the scene and saw some men running, including Palacio (whom a deputy recognized). Deputies also arrested defendant and a third man. A deputy who responded to Valencia's residence found Valencia lying face down. Valencia later died from multiple gunshot wounds. Deputies found a pistol underneath Valencia's body and spent casings nearby, and they found a pair of gloves, a .22-caliber rifle, and spent shell casings across the street from Valencia's residence. Palacio's fingerprints were on the rifle, and some of the casings had been fired from it. Deputies found gang paraphernalia during a search of Palacio's home.

While defendant was in county jail awaiting trial, he had a conversation with a visitor over the jail's intercom that was surreptitiously recorded. When the visitor told defendant that she wanted to be a bartender, defendant responded, "Babe, I killed the bar owner. Don't do bartending."

At trial, an expert on criminal street gangs in the area testified that he believed Palacio and defendant belonged to a gang called "Varrio Ghost Town," and that Valencia's killing was committed for the benefit of the gang.

## B. *Procedural Background*

Defendant and Palacio were tried together, charged by information with murder. (§ 187, subd. (a).) The information also alleged enhancements concerning firearm and

criminal street gang activity. The jury convicted Palacio of first degree murder and convicted defendant of second degree murder, and it found the enhancement allegations against both defendants true. The trial court sentenced defendant to 15 years to life for the murder, and a consecutive sentence of 25 years to life for a firearm enhancement, for a total sentence of 40 years to life. The trial court stayed the sentence imposed on defendant for the other enhancements.

Defendant and Palacio appealed. (*People v. Palacio* (Jul. 20, 2001, H020064) [nonpub. opn.].) One of the issues defendant raised was that there was insufficient evidence to support a conviction for second degree murder. Defendant asserted that he was convicted as an aider and abettor of the murder, and there was no evidence that he shared Palacio's intent to kill Valencia or that he performed an act to encourage or facilitate Palacio's crime. This court found the evidence supported defendant's conviction. (*Id.* at pp. 15-16.) This court also struck the criminal street gang and discharging a firearm enhancements for both defendants, and it ordered that both defendants receive additional presentence custody credit. (*Id.* at p. 19.) On remand, the trial court imposed a previously stayed firearm enhancement and sentenced defendant to prison for 16 years to life.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, imposing a number of "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 added section 1170.95 (now § 1172.6), which provided an avenue for a person convicted in cases involving felony murder or murder under the natural and probable consequences doctrine to file a petition with the sentencing court to vacate the conviction and to be resentenced.

Defendant filed a petition under former section 1170.95 in January 2019, asserting that he could no longer be convicted of first or second degree murder because of changes made to sections 188 and 189. The prosecutor opposed the petition, asserting that

4

defendant was not convicted under a theory of felony murder or based on the natural and probable consequences doctrine, and thus he was not entitled to relief. The trial court then heard argument on the petition. Defense counsel stated as follows: "Unfortunately, . . . there really, to me, is not any evidence in the record of either a direct and natural consequences theory. It wasn't argued at the trial level. [¶] And so -- and I agree with the prosecution that there has been no change to the aider and abettor instruction." The trial court asked defense counsel whether he was conceding the matter, and defense counsel replied that he was merely submitting the petition for the court's consideration, stating, "I think that my client still holds out some sort of hope that he somehow fits within, you know, the code section . . . ."

The trial court denied defendant's petition in May 2019. The trial court ruled that defendant failed to make a prima facie showing that he fell within the provisions of former section 1170.95, finding that defendant was not convicted under the felony-murder rule or the natural and probable consequences doctrine, and defendant failed to establish that he could not presently be convicted of murder.

Effective January 1, 2022, the Legislature codified further changes concerning murder law and imputed malice.[3] Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) further amended what is now section 1172.6, providing expanded opportunities for certain persons to seek relief under this section, along with other changes. (§ 1172.6, subd. (a)(1), as amended by Stats. 2021, ch. 551, § 2.)

Defendant filed another petition in January 2022, soon after these changes took effect. The trial court denied the second petition on February 8, 2022. The trial court's

---

[3] One of these changes was to amend what is now section 1172.6, subdivision (a) to provide, in part, that a person convicted of "murder under the natural and probable consequences doctrine . . . , attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition for relief. (Stats. 2021, ch. 551, § 2.) This legislative change came after the California Supreme Court's holding in *People v. Chiu* (2014) 59 Cal.4th 155, 166 that the natural and probable consequences doctrine cannot support a conviction for first degree premeditated murder.

ruling, which was issued by a different judge than the judge who denied defendant's first petition, stated that the earlier judge "denied Petitioner's Petition for Resentencing pursuant to [Penal Code] section 1170.95. Accordingly, the Court respectfully declines to take further action on the [Penal Code section] 1170.95 petition filed on January 10, 2022." This appeal followed.[4]

## III. DISCUSSION

Defendant contends that the trial court erred in denying his petitions without issuing an order to show cause and conducting an evidentiary hearing. He does not assert that he was convicted under the felony-murder rule or the natural and probable consequences doctrine. Instead, he argues that he was convicted as a direct aider and abettor to Palacio's murder of Valencia, and that an aider and abettor who acts with implied malice cannot be convicted of second degree murder under recent changes to sections 188 and 189. We do not reach the merits of defendant's argument because we find that the trial court erred by not considering the merits of defendant's second petition for relief under section 1172.6.

### A. *Legal Principles and Standard of Review*

Whether the trial court properly denies a section 1172.6 petition based on failure to make a prima facie case for relief involves multiple standards of review. We review

---

[4] Defendant initially appealed based on the trial court's denial of his second petition for relief. He then moved this court for permission to file an untimely notice of appeal regarding the denial of his first petition for relief. This court granted the motion. Defendant then filed an amended notice of appeal covering the denial of his first petition for relief. While defendant's amended notice of appeal only specifies that he is appealing the denial of his first petition, the denial of the second petition was the subject of defendant's original notice of appeal, defendant's motion referenced both petitions, and his brief argues that he is entitled to relief under Senate Bill 775, which was not yet effective at the time of defendant's first petition for relief. We therefore interpret defendant's amended notice to encompass the denial of his second petition. Because we grant defendant relief concerning his second petition, defendant's appeal concerning his first petition is moot, as his second petition seeks the same relief as his first petition.

6

the court's factual findings for substantial evidence and the court's application of the law to those facts de novo. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 981 (*Drayton*), overruled in part on another ground in *Lewis*, *supra*, 11 Cal.5th at pp. 962-970.) Where an appellate court reviews a trial court's summary denial of a petition for relief under section 1172.6 and that denial was based on interpretation of the statute, our review is de novo. (*Drayton*, *supra*, at p. 981.)

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) The malice necessary for a killing to constitute murder comes in two forms, express or implied. (§ 188, subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (*Id.*, subd. (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id.*, subd. (a)(2).) "The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not." (*People v. Soto* (2018) 4 Cal.5th 968, 976.) "Implied malice has ' "both a physical and a mental component. The physical component is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.' . . . The mental component is the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.' " ' [Citation.]" (*People v. Johns* (2020) 50 Cal.App.5th 46, 57 (*Johns*).)

Prior to Senate Bill 1437's amendments, the felony-murder rule and the natural and probable consequences doctrine provided avenues to prove murder without demonstrating malice (express or implied). "The felony-murder rule made 'a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state.' [Citation.] . . . The natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other

7

offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.' [Citation.]" (*Johns*, *supra*, 50 Cal.App.5th at pp. 57-58.) Thus, before Senate Bill 1437, "the natural and probable consequences doctrine constituted an exception to the requirement of either express or implied malice for a murder conviction. [Citation.] Now, since the amendment, the natural and probable consequences doctrine can no longer support a murder conviction, but the change did not 'alter the law regarding the criminal liability of direct aiders and abettors of murder . . . . One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.' [Citations.]" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953, fn. omitted.)

In *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*), the California Supreme Court summarized the changes effected by Senate Bill 1437 as follows:

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]

"To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony

8

and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' . . .

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above."

The Legislature later imposed further changes through Senate Bill 775, effective January 1, 2022. The legislative declarations stated that Senate Bill 775: (1) "[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories"; (2) codified the holdings of *Lewis*, *supra*, 11 Cal.5th at pp. 961-970 regarding "petitioners' right to counsel and the standard for determining the existence of a prima facie case"; (3) "[r]eaffirm[ed] that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt"; and (4) "[a]ddresse[d] what evidence a court may consider at a resentencing hearing . . . ." (Stats. 2021, ch. 551, § 1.) Senate Bill 775 also amended what is now section 1172.6, stating that in addition to those convicted of felony murder or murder under the natural and probable consequences doctrine, a person convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" can file a petition for relief. (§ 1172.6, subd. (a)(1), as amended by Stats. 2021, ch. 551, § 2.) Senate Bill 775 also specified that following submission of briefs on a petition for relief, the trial court

9

"shall hold a hearing to determine whether the petitioner has made a prima face case for relief." (§ 1172.6, subd. (c), as amended by Stats. 2021, ch. 551, § 2.)

In considering a petition for resentencing, the trial court must first decide whether the petitioner has made a prima facie case for relief. (§ 1172.6., subd. (c).) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for [former] section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "[T]he prima facie showing the defendant must make is that he [or she] did not, in fact, act or harbor the mental state required[] for a murder conviction under current law." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

**B.** *Analysis*

During the hearing regarding defendant's first petition, defense counsel acknowledged that defendant was not prosecuted under the felony-murder rule or the natural and probable consequences doctrine, which were the only bases specified under former section 1170.95 to seek relief. Thus, defense counsel merely rested on the petition as submitted. The trial court denied the petition, finding that defendant was not convicted under the felony-murder rule or the natural and probable consequences

10

doctrine, and that defendant failed to show that he could not be convicted of first or second degree murder under changes to sections 188 or 189.

By the time of defendant's second petition, the changes made by Senate Bill 775 had taken effect. Defendant did not allege in his second petition how he could establish a prima facie case for relief, but the form petition he submitted did assert that he met all of the statute's requirements, as amended by Senate Bill 775. Unlike with defendant's first petition, the record provides no indication that the trial court received the written positions of the parties, heard argument on defendant's second petition for relief, or stated an independent conclusion as to whether defendant made a prima facie case for entitlement to relief. The court's order, issued by a different judge than the judge who denied defendant's first petition, merely referenced the court's denial of defendant's first petition, stating that the court "respectfully declines to take further action on" defendant's January 2022 petition.

Defendant asserts on appeal that he could not presently be convicted of murder because as an aider and abettor to Valencia's murder, he could only be convicted upon a finding of express malice, not implied malice. He argues: "After Senate Bill Number 1437, murder is the only possible target crime for a defendant accused of aiding and abetting a murder. Differently put, a defendant charged as an aider and abettor to murder must act with 'the intent or purpose of facilitating the perpetrator's commission of [murder].' [Citation.] It follows that he [or she] must intend to kill -- for one cannot intend to facilitate a murder without intent to kill." As defendant acknowledges, "a series of recent cases" have held the opposite—that a person can be convicted for aiding and abetting murder based on implied malice. (See *Gentile*, *supra*, 10 Cal.5th at p. 850 ["[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"];

11

*People v. Powell* (2021) 63 Cal.App.5th 689, 711 (*Powell*) ["[T]here is no authority for the proposition that an aider and abettor of second degree implied malice murder must intend to kill"]; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 391 ["[D]irect aiding and abetting implied malice murder remains a valid form of murder liability, because a person convicted of aiding and abetting implied malice murder is not a person convicted of murder pursuant to a theory under which malice is imputed based solely on the person's participation in a crime"]; *People v. Langi* (2022) 73 Cal.App.5th 972, 979 (*Langi*) ["Current law thus provides that the actual killer, or a direct aider and abettor of the killing who knew that his (or her) conduct endangered the life of another and acted with conscious disregard for life, may be guilty of second degree murder"]; *People v. Superior Court* (2021) 73 Cal.App.5th 485, 499 [reading *Gentile* to mean "that an aider and abettor who acts with implied malice can be guilty of murder entirely apart from the natural and probable consequences doctrine" and that "*Powell* is entirely consistent with *Gentile* in basing murder liability on the aider and abettor's own state of mind— *conscious* disregard for life."].)

Defendant argues that the Supreme Court's statements in *Gentile* amount to unpersuasive dicta, and that the Court of Appeal opinions listed above were wrongly decided. However, the trial court failed to conduct an independent review of defendant's second petition for relief, so this argument could not be developed at the trial court to determine whether an order to show cause and an evidentiary hearing were necessary, based on the facts of defendant's case. The court's ruling stated that it "decline[d] to take further action" on defendant's second petition, referencing its order in response to defendant's first petition. This indicates that the trial court did not consider the merits of the second petition. The record provides no indication that the trial court obtained a response from the prosecutor and permitted defendant to file a reply to the prosecution's response, as specified by section 1172.6, subdivision (c). Likewise, the record does not indicate that the trial court "h[e]ld a hearing to determine whether the petitioner has

12

made a prima facie case for relief," as specified by this same section. Nothing in section 1172.6 indicates that a defendant cannot file a second petition for relief under this section following a change in the law that affords greater opportunities for seeking relief.

The trial court was required to consider the merits of defendant's second petition for relief and independently determine whether defendant could make a prima facie case for relief under section 1172.6, as amended by Senate Bill 775. At the hearing on defendant's first petition, his counsel acknowledged that defendant was not convicted under the felony-murder rule or the natural and probable consequences doctrine, and thus defendant was unlikely to be able to obtain relief under the amendments of Senate Bill 1437. However, by the time of defendant's second petition, the law had changed and relief was not limited just to persons convicted under the felony-murder rule or the natural and probable consequences doctrine. Defendant alleged in his second petition that under the amended law, he was eligible for relief, and the trial court was required to consider anew whether petitioner made a prima facie case for relief, utilizing the revised requirements for making the prima facie determination. If the trial court determined defendant made a prima facie case, it was required to issue an order to show cause. If the trial court determined defendant did not make a prima facie case, the trial court was required to "provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) Either way, this court does not have the benefit of the trial court's determination of defendant's entitlement to relief under his second petition, incorporating the revisions implemented by Senate Bill 775.

In two of the cases that have held that second degree implied malice murder remains a valid theory of culpability for aiders and abettors, the courts have found that the standard aiding and abetting instruction incorrectly explains the direct aider and abettor's requisite mens rea. (See *Powell*, *supra*, 63 Cal.App.5th at p. 714 [finding that the standard aiding and abetting jury instruction allowed a jury to convict an aider and

13

abettor without requiring the jury to find that the defendant acted with the requisite mens rea under recent amendments, but finding the error harmless]; *Langi*, *supra*, 73 Cal.App.5th at pp. 980-984 [noting the same issue with the standard aiding and abetting instruction and finding the trial court erred by deciding at the prima facie stage that the instructional error was harmless].) In his opening brief on appeal in this court, defendant did not specifically note this issue concerning the standard aiding and abetting instruction. The Attorney General's brief in response quoted the aiding and abetting instruction, arguing that the jury's instructions, including the aiding and abetting instruction, helped ensure defendant was not convicted under a theory of imputed malice. Defendant's reply brief then took up the issue of the aiding and abetting instruction, asserting that the instruction did not require the jury to find that defendant had "a specific intent to kill." We express no opinion on this issue and, to the extent defendant raises the issue on remand, the trial court may consider this issue in the first instance.

## IV. DISPOSITION

The trial court's February 8, 2022 order is reversed. The matter is remanded with directions to appoint counsel, consider whether to issue an order to show cause concerning defendant's January 10, 2022 petition, and conduct further proceedings in accordance with Penal Code section 1172.6. Defendant's appeal regarding his January 7, 2019 petition is dismissed as moot.

14

_____

BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:



_____

WILSON, J.




_____

BROMBERG, J.




*People v. Cedillo*
**H049841**